**No. 21-13662**

---

**IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**

---

GPDEV, LLC and SIMONS EXPLORATION, INC.,

*Plaintiffs-Appellees,*

v.

TEAM SYSTEMS INTERNATIONAL, LLC,

*Defendant-Appellant.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
Case No. 4:18-cv-00442-RH-MAF

---

# REPLY IN SUPPORT OF CONSOLIDATED MOTION OF EQUITY MEMBERS TO LIFT THIS COURT'S STAY, WITH NOTICE OF STATUTORY TERMINATION OF THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(e)(1), AND MOTION TO INTERVENE

---

## INTRODUCTION

Appellees' Response rests on three principal contentions: (1) that the Third Circuit's opinion forecloses relief in this Court; (2) that the automatic stay remains effective, or that 11 U.S.C. § 362(e)(1) cannot affect this Court's stay; and (3) that Intervenors lack a sufficient interest, that the Trustee's exclusive authority bars intervention, or that Intervenors delayed too long. Each contention is incorrect.

The equitable reality is straightforward. The Trustee first described this appeal as “compelling” and the underlying errors as “so large . . . we're talking several million dollars.” He then settled the claim for approximately ninety cents on the dollar, refused Intervenors' offers to fund the appeal at no cost to the estate, agreed to dismissal of this appeal as a term of the settlement, and sued Intervenors personally to collect the settled amount. No existing party will present the pure legal defenses that could eliminate the judgment.

Intervenors do not seek to administer the estate or to displace the Trustee's authority over estate assets. They seek to protect their own distinct interests—as defendants facing personal liability and as residual equity holders—after the estate's representative abandoned the defenses that could defeat the judgment on which they are being sued. This appeal is the only remaining vehicle in which the validity of that judgment can still be tested on the merits. Once it is dismissed, that vehicle is gone. Because the automatic stay that supplied the sole basis for this Court's stay order has terminated, this Court should lift its own stay, permit intervention, and allow the pure legal issues to be briefed.

Nowhere in its objection does the Appellee defend the validity of the judgment under the strict laws governing federal contract procurement. The Appellee's complaint sought a "commission" fifteen times—a remedy explicitly barred by federal law. Although federal precedent mandates the prompt dismissal of illegal

claims as a matter of law, both the Bankruptcy Court and the Florida District Court failed to act on this dispositive defect.

## I. THE THIRD CIRCUIT'S OPINION DOES NOT FORECLOSE RELIEF IN THIS COURT.

The Third Circuit held that Intervenors possess Article III standing because the settlement diminishes the value of their equity interests and exposes them to a claim for the judgment, as well as being parties in interest under 11 U.S.C. § 1109(b). *Acosta v. Miller*, No. 24-3365, slip op. at 5–6 (3d Cir. Mar. 26, 2026) ("…on account of their equity interests in the estate, the members were 'parties in interest' who could challenge the trustee's proposed settlement of TSI's Eleventh Circuit appeal"). The Appellees simply ignore the 3rd Circuit ruling. It denied relief solely on the prudential ground of bankruptcy appellate standing, finding the interest "too contingent" on the record then presented. *Id.* at 7–8. The Third Circuit noted that the contingency is *this very appeal* and suggested that the members could participate in the appeal.

That prudential determination does not decide the question before this Court. First, the Third Circuit applied the judge-made doctrine of bankruptcy appellate standing—a prudential limit on who may appeal a bankruptcy court's order—<u>not the standard governing intervention in a court of appeals.</u> It was not asked to authorize or prohibit intervention here and did not purport to limit this Court's authority over

its own docket. A prudential ruling on a different question, under a different standard, and on a different record does not issue-preclude the intervention inquiry.

Second, intervention does not require the type of standing the Third Circuit found lacking. In this Circuit, "a party seeking to intervene need not demonstrate that he has standing in addition to meeting the requirements of Rule 24 as long as there exists a justiciable case and controversy between the parties already in the lawsuit." *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). A live case or controversy plainly exists between Appellees and TSI. The "too contingent" holding therefore does not answer—much less foreclose—whether Intervenors satisfy Rule 24 in this Court. It is, in fact, a circular argument, as the Third Circuit's *contingency was this* appeal.

## II. THE AUTOMATIC STAY TERMINATED, AND THIS COURT SHOULD LIFT ITS OWN STAY.

On February 25, 2022, this Court ordered the appeal "STAYED pending further order of the bankruptcy court and this Court. See 11 U.S.C. § 362(a)." (Doc. 28.) The Bankruptcy Court never entered an order staying this appeal. The sole basis for this Court's stay was the automatic stay under § 362(a), and the order expressly conditioned its continuation on the bankruptcy stay.

.

On January 26, 2022, while still controlled by Intervenors, TSI moved for limited relief from the automatic stay in order to continue prosecuting this appeal. Bankr. D.I. 38. Under § 362(e)(1), the stay terminates by operation of law if the court does not rule within thirty days of the request. *Borg-Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir. 1982). The Bankruptcy Court did not rule within thirty days, and no later order re-imposed a stay of this appeal. Counsel for the United States Trustee confirmed contemporaneously that no stay of the appeal had been granted at either the District Court or this Court, and that the Debtor had moved to continue the appeal "as if there was a stay in place" so that it could be finished. (Bankr. D.I. 140, Hr'g Tr. at 47–48.)

Appellees characterize *Borg-Warner* as a pure waiver case. The creditor there continued to trial and thereby waived any objection to the untimely hearing; here, by contrast, the appeal remained in abeyance, and no comparable waiving conduct occurred. *Borg-Warner*'s core recognition that the thirty-day lapse terminates the stay by operation of law remains intact and applies. The statutes and case law leave no doubt.

Appellees also stress that § 362(e)(1) speaks of "the party in interest making such request," which was TSI. That is precisely the point. Termination of the stay as to TSI—the Appellant—is what removes the § 362(a) predicate on which this Court expressly relied. The separate question of who prosecutes the appeal once the

Trustee abandoned it is answered by the inadequate-representation and distinct-interest showings below. Because the statutory foundation for this Court's stay has disappeared, the Court should now recognize that the only predicate for a stay was from the bankruptcy court and that has dissolved by operation of law.

## III. INTERVENORS SEEK TO PROTECT THEIR OWN DISTINCT INTERESTS, NOT TO USURP THE TRUSTEE'S AUTHORITY.

Appellees' lead structural argument invokes 11 U.S.C. § 323 and *In re All American of Ashburn, Inc.*, 805 F.2d 1515 (11th Cir. 1986), to contend that intervention would let non-parties usurp the Trustee's exclusive authority over estate assets. That argument misapprehends the capacity in which Intervenors appear.

Section 323 and *Ashburn* bar equity holders from derivatively asserting the estate's affirmative claims. *See Ashburn*, 805 F.2d at 1517–18 (enjoining shareholders from pursuing claims the trustee had settled). That case is the mirror opposite of this one. Intervenors assert no estate claim. They do not seek to prosecute TSI's appeal in the Trustee's stead, to control estate property, or to recover anything for the estate. As recognized by the Third Circuit, they seek leave to appear in their own names to protect interests that belong to them personally, not to the estate.

Those interests are the defenses to a judgment Intervenors are now being pursued to pay. The right to contest a judgment's validity runs to the party against whom the judgment is enforced; through the Trustee's adversary proceeding, that

party is now Intervenors. A litigant with a "direct, substantial, and legally protectable" interest in the subject of an action may intervene to protect it, *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1249 (11th Cir. 2002), and Intervenors' exposure to personal liability on the very judgment at issue is such an interest. Asserting one's own defenses to one's own liability is not the derivative assertion of an estate claim that *Ashburn* forbids. And because a justiciable controversy already exists between Appellees and TSI, Intervenors "need not demonstrate . . . standing in addition to meeting the requirements of Rule 24." *Chiles*, 865 F.2d at 1213.

## IV. INTERVENORS HAVE A CONCRETE INTEREST AND FACE IMPAIRMENT THE ADVERSARY PROCEEDING CANNOT CURE.

### A. Dual pecuniary injury.

Intervenors' most immediate injury is personal and non-contingent. They are defendants in the Trustee's adversary proceeding (Adv. Proc. No. 23-50004), which seeks to collect the settled amount from them individually. That exposure is present, direct, and independent of the estate's distribution waterfall. A movant satisfies Rule 24's interest and impairment requirements when the disposition of an action may, as a practical matter, impair its ability to protect its own legal rights or financial exposure. See *Stone v. First Union Corp.*, 371 F.3d 1305, 1308–09 (11th Cir. 2004); *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d at 1249; *Chiles*, 865 F.2d at 1213. Separately, as TSI's residual equity holders, Intervenors stand to benefit from any reduction or elimination of the largest claim against the estate; the Trustee's own

2021 partnership return and the claims register corroborate a potential surplus.[1] The personal-liability injury alone suffices; the equity interest reinforces it.

### B. Impairment: loss of the only remaining vehicle for merits review.

Appellees respond that Intervenors may simply raise their defenses in the adversary proceeding. That overlooks what dismissal of this appeal would likely destroy. This appeal is the only live vehicle in which the validity of the Florida judgment can still be tested on the merits. The Trustee, who now controls TSI's appellate rights, has agreed to surrender that vehicle through dismissal for his own financial interests. Once the appeal is dismissed, the opportunity for a merits reversal appears gone permanently, and whatever preclusive or practical weight the judgment carries against Intervenors in the adversary proceeding can no longer be blunted by an appellate ruling that the judgment is invalid as a matter of law. The creditors' will argue that dismissal of this appeal is *res judicata* and the matter is resolved.

Indeed, a merits reversal in this Court would directly reduce or eliminate the very sum the Trustee seeks to collect from Intervenors personally in the adversary proceeding. Dismissal thus may eliminate the last mechanism through which the

---

[1] Although Appellees note that the Florida district court previously questioned Acosta's membership status, both the Chapter 7 Trustee and the Bankruptcy Court have treated Acosta as a member and manager of TSI. See Adv. Compl. ¶ 7 (Bankr. D.I. 271) (describing Acosta as a manager and member of the Debtor's Management Committee); *In re Team Sys. Int'l, LLC*, Bankr. D.I. 304 at 4 (referring to Acosta as one of the Debtor's members).

judgment's validity could be reviewed, and so, "as a practical matter," would "impair" Intervenors' "ability to protect that interest." *Chiles*, 865 F.2d at 1213. That is classic impairment. That this appeal began pre-petition strengthens the equity considerations.

## V. THE TRUSTEE HAS ABANDONED THE APPEAL AND DOES NOT ADEQUATELY REPRESENT INTERVENORS.

The burden of showing inadequate representation is minimal and is satisfied by a showing that representation "may be" inadequate. *Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 697 (11th Cir. 2017). Intervenors far exceed it. The Trustee has joined the Appellees for all intents and purposes.

The Trustee initially called this appeal "compelling," described the errors as multi-million-dollar in magnitude, and incorporated the Appellant's Brief by reference. Bankr. D.I. 164 ¶ 8; Bankr. D.I. 177 ¶¶ 28–29; June 15, 2022 Hr'g Tr. 55:4–16. He then abandoned it: he settled for roughly ninety cents on the dollar, refused Intervenors' offers to fund the appeal at no cost to the estate, agreed to dismissal, and filed the adversary proceeding to collect the settled sum from Intervenors personally. The Trustee and his counsel had notice of the illegality defense from the Members' objection, Bankr. D.I. 357, and from the very brief the Trustee had called compelling.

A representative who has abandoned the position, and who is now adverse to the would-be intervenors, does not adequately represent them. The Trustee's institutional interest in efficiently closing the estate is not congruent with Intervenors' interest in defeating a judgment on which the Trustee is suing them personally. No existing party will press the diversity, illegality, or parole-evidence defenses.

## VI. THE SETTLEMENT APPROVAL DID NOT ADJUDICATE THE UNDERLYING CLAIM'S LEGALITY.

Appellees rely on the finality of the settlement approval, affirmed by the District of Delaware and the Third Circuit. But those proceedings decided a different question. The approval inquiry tested whether settling was a reasonable exercise of the Trustee's business judgment; it did not adjudicate, on the merits, whether the underlying claim is illegal under 41 U.S.C. § 3901(b)(1) and FAR 52.203-5(a). Intervenors do not ask this Court to reopen the settlement-approval order they already appealed. They ask it to decide the appeal that the settlement sought to make disappear—the merits challenge to the judgment itself, which no court has resolved.

That distinction matters because illegality and public-policy defenses cannot be waived or bargained away by settlement. *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77 (1982). Approval of a settlement on business-judgment grounds, without any merits determination on the raised illegality defense, neither extinguishes that

defense nor precludes this Court from deciding the pure legal question this appeal presents.

## VII. THE MOTION IS TIMELY.

Timeliness "is to be determined from all the circumstances," with particular attention to when it became clear that the movant's interests would no longer be protected by the existing parties. *Cameron v. EMW Women's Surgical Ctr.*, 595 U.S. 267, 279–80 (2022); *accord Chiles*, 865 F.2d at 1213. As well as when did Intervenors become aware that this intervention route was the correct legal path after the Third Circuit's denial of the bankruptcy path.

Whatever divergence from the Trustee's position began in 2023, intervention in this appeal did not become necessary until dismissal of the appeal became imminent. Until the Third Circuit issued its decision and certified judgment, the settlement—and thus the fate of this appeal—remained under active review in the courts with jurisdiction over it, and this appeal was in no danger of dismissal. There was nothing yet to intervene against. Intervenors moved promptly once the Third Circuit's judgment made dismissal imminent.

The intervening period reflects diligent litigation of the settlement in the proper forum, not delay; pursuing parallel challenges in two circuits at once would have been wasteful. Appellees identify no prejudice: they have never filed a brief, and a new briefing schedule can be set without unfairness.

## VIII. THE PUBLIC INTEREST FAVORS REVIEW OF THE PURE LEGAL ISSUES.

The nature of the abandoned defense by the Trustee reinforces the case for intervention. The claim seeks a contingent fee for obtaining a federal contract—an arrangement prohibited by 41 U.S.C. § 3901(b)(1) and FAR 52.203-5(a) and long held void as against public policy. Allowing the appeal to be dismissed without review would let stand, without scrutiny of the merits, a payment of the very kind of fee that federal law forbids. At stake here is whether bankruptcy court procedures can effectively negate a federal rule making this claim illegal. That public interest, together with the strength of the abandoned diversity, illegality, and parole-evidence defenses, confirms that intervention is warranted so the issues may be decided on their merits.

## CONCLUSION

Intervenors do not seek to administer the estate or to displace the Trustee. They seek to protect their own distinct interests after the Trustee abandoned the defenses to a judgment on which they are being sued personally. The automatic stay that supplied the basis for this Court's stay has terminated, and this appeal appears to be the last vehicle for a merits review of the judgment (clearly that is the position of the Appellees). This Court should recognize the stay entered February 25, 2022,

based on the automatic stay is no longer in effect, and grant the motion to intervene, and enter a scheduling order for briefing.

Dated: July 31, 2026

Respectfully submitted,

/s/ Randy M. Mott
Randy M. Mott, Esq.
DC Bar No. 211037
1629 K Street, N.W., Suite 300
Washington, DC 20006
Telephone: 703-258-4097
Email: randymott@rmottlaw.com
*Counsel for Intervenors*

## CERTIFICATE OF COMPLIANCE

This reply complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(B) because it contains 2370 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

This reply complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E), 32(a)(5), and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

/s/ Randy M. Mott
Randy M. Mott

**CERTIFICATE OF SERVICE**

I certify that on July 31, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of the filing to all counsel of record registered with that system.

/s/ Randy M. Mott
Randy M. Mott